Case number 21-7133, Eugene Hudson, Jr. v. American Federation of Government Employees Appellant. Mr. Roth for the appellant, Ms. Morgan for the appellee. Good morning, ma'am. Please, the court. I'm Andy Roth on behalf of the defendant appellant, Apchey. Apchey raises two separate grounds for reversal of the decision below denying judgment as a matter of law, or JMOL, if I may refer to it as that. The first ground is that there was insufficient evidence at trial to support a finding of liability on the issue of race discrimination. And the second issue is that even assuming that there was sufficient evidence on the On the first issue on liability, it is common ground that plaintiff proceeded in this case on what this court referred to in the Ponsonby-Billington case as the single motive or pretext theory of discrimination. And therefore, plaintiff's burden was to show in that theory that the single motive, the basis for these two employment actions that were challenged was discrimination, not something other than discrimination. It was either, the court has put it in a lot of different ways, but for, it was the real reason, the true reason was race discrimination. On the first issue, we should prevail, Apchey should prevail under the straightforward application of the Carpenter case because plaintiff conceded away her theory, his theory of the case, that it was... That wasn't a mixed motive case, though. It was not a mixed motive case. Ponsonby-Billington also makes clear that if the plaintiff wants a mixed motive instruction at trial, they have to ask it, they ask for it. The court proposed an instruction which was consistent with the theory of the case, but not for instruction. Was this the cause of race discrimination? There was no objection from the plaintiff to that instruction. So that was, under the court's instruction in the case, the jury could only find race discrimination. The court didn't say solely, did it? I'm sorry? The instruction didn't say solely. It didn't say solely. In fact, in the Ponsonby-Billington case, the court made very clear that it was disclaiming any test. So let's suppose the evidence showed that there were two reasons why, and one of them was racial. Yeah, I think, I mean, if the evidence, I don't know what the result would be, Your Honor, if the evidence was an equipoise on that point. I think you'd have to show it. You don't know what the... I think it would probably be, it would probably be, it would probably be defense for it. Does Title VII permit an employer to be just a little bit discriminatory? It does not permit it, no. And if race enters into it, you can proceed on a mixed motive theory and then switch the burden to the defendant to then prove that it would have taken the same action. So you're essentially shifting around the burden of proof on but-for causation. But the plaintiff didn't proceed that way. He proceeded on a single motive theory. And he conceded his case away. I'm a little confused, though. You're not challenging the jury instructions that were given? You're not challenging... No, we're not challenging the jury instructions as well. The jury instruction was accurate and set the burden at but-for causation. This action was taken because of race. And our argument is that under that instruction, under the plaintiff's theory of the case, the verdict cannot be sustained because there was no proof. In fact, there was a concession against interest that it was not for reasons of race. He testified in his deposition. But he explained his deposition testimony at trial, right? So it can't be the case, especially when we're taking the evidence in the light most favorable kind of to the verdict, that we cherry-pick the deposition and ignore his testimony at trial, right? Oh, that's exactly right, Your Honor. We are not cherry-picking the deposition. And he didn't explain... I mean, I think it's not really accurate to say he explained it. He didn't disavow it. He didn't say you were twisting our words. He didn't say you were cherry-picking. He did not say you're leaving something out. None of those things. He said, I didn't give a complete answer. He said, I didn't give a complete answer. And he said, I didn't give a complete answer. It was he acknowledged that it was what he said in the deposition. So he embraced the deposition testimony. He didn't try to walk away from it. But he said there was an additional reason, and the additional reason was race. That's where his case falls down. I mean, there is... If he had proceeded on a mixed motive theory, he might have had something. We think the evidence was weak, and you can't obviously just say, I think it was because of race. You have to put on a case for that. But assuming he put on a sufficient case that a jury could draw the conclusion that race did enter into it, he's still losing. Because his burden under the instruction and under the law, the jury was properly instructed. He had to prove that race was the true reason, the real reason. How do we know the jury didn't credit the other reason? The jury could have credited the race reason and didn't not credit the other reason. I don't think it's a credibility issue. I mean, when the plaintiff makes a concession against, in the Scott case. In a jury trial, we don't know what evidence the jury is going to credit or not credit, believe, not believe, right? I still think we- The plaintiff can say, there were 20 different reasons why they took this action. And list them all out, it doesn't mean that the jury is going to believe all 20. The jury might believe just one of them, right? Well, let me answer it this way. I think it's sort of a remarkable proposition to say the jury could have discredited the plaintiff's own concession against interest. In the Scott case that we talked about in our reply brief, court reversed the denial of JML and ordered the JML to be granted. Because it said the plaintiff had conceded away their case. I don't think a jury can just sort of ignore what discredit. I mean, it could certainly discredit the defense explanation, but it seems like an auditing. But even if you- Did you ask the jury below to discredit both explanations? No. Your client conceded below that race was a reason? Or the- That politics was a reason? I mean, you have to differentiate between our client and the former president who was accused of the wrongdoing cops. I mean, he gave testimony. Our client's position is they have the burden of proof. So we didn't take a position on whether the plaintiff's argument that Cox was dissembling to cover up the political purpose. We didn't take issue with that, no. We didn't concede that it was right. All I'm saying is it's hard to just neither party challenge the credibility of that testimony. And so I think it's to uphold the jury verdict on the ground that the jury could have ignored a fatal concession by the plaintiff. I don't know of a case that would support that proposition. But even if they didn't fully buy into that, he still loses. Because his own case was that, and it was an 11th hour thing. I didn't say this in my deposition. Excuse me. So I'm gonna say, it wasn't a complete answer. I'm gonna concede. I don't know how a jury can discredit the subsequent concession. Yes, but I said the deposition was true. I think it had a lot to do with money. And it was really a politically motivated thing. But I also think it really takes on the character in that context when it comes in at the 11th hour of trial as a way to sort of salvage your case at the 11th hour. I don't think a jury could just based on that testimony bullet. I guess what I'm not following here is just because he says I think it had to do with money, the jury doesn't have the credit that it did have something to do with money, just like it wouldn't have to credit testimony provided by the defense that the decision didn't have anything to do with money. I mean, that's where the jury to decide based on all the evidence and all the facts and circumstances. Well, I didn't think you just said. It's not like kind of a question of fact. It's like was $20 paid on Monday or not? And the plaintiff can kind of concede that he received $20 on Monday. This was about like why something happened. That is definitely true, your honor. Let me just say this. It wasn't like he just said, I have mixed feelings about this. I think it might have had something to do with race. He was very definitive. He said, this was just punishment for my not supporting his organizing thing. This was because of money. It had nothing. And here's a person who, I mean, he was working. He was the second in command. He was working with the president on a daily basis. I mean, when you sort of spin out a story like that, based on your firsthand experience, I mean, you're in the best position to say that. And let me just add, I see my time has expired. But our case was even stronger than just his deposition testimony. His chief witness in the case was a fellow person on the executive board or the executive council of the union, a woman by the name of Jane Neidhart. If you look at appendix 442, her story was entirely consistent with the plaintiff's narrative. She said Cox had a huge ego. He didn't like it that Eugene Huntsman seemed smarter than him. He had a better grasp of the Constitution. He was irritated by it. He didn't say that evoked racist feelings in him. He was irritated by that, that he was on top of things that he wasn't. And that's basically, in her testimony, why he did this. And that was basically gonna be the end of her testimony. And what does plaintiff's counsel do in an effort to sort of resurrect the case after these concessions that were made by the plaintiff himself? She asked this leading question. Do you believe Eugene's race had anything to do with the fact that those departments were taken away from him? I do believe they had a part of it, exactly. So I think when you look at the whole sort of way this case came in, both at the deposition stage and obviously more important at the trial stage. Have you ever heard the phrase uppity Negro? I'm sorry?  I have heard the phrase. And it refers to discrimination against an African-American because they aim to act like they know as much as a white person or more, right? That's what it means, right? I understand that. That's the context. She did not- That's a form and motive of discrimination. Absolutely. But she, neither he nor his chief witness Nyquist, I urge the court to look at this very closely, the testimony of 442 by Nyquist. I think it's particularly telling. I can understand- Why isn't the witness's testimony that you just recounted to us consistent with that sort of a theory of motive for discrimination? It doesn't come across that way. I mean, it could theoretically, and I can understand that feeling. And I sort of wondered about that myself, but the testimony was not to that effect. And if it were, then it wouldn't create the need to jump in with this leading question. Well, she interjects race into it. Well, do you think race had it as if the prior testimony on its face does not evoke that concept at all? And there wouldn't have been a need to ask that leading question. I think to sustain a jury verdict based on, yes, that could definitely be a situation that exists in the world. I don't deny that. But the plaintiff, even in a race discrimination case, has the burden of proof. And our submission to you is, in the words of the Carpenter case, he shot himself in the foot. And he put on a witness who shot him in the other foot. That's our position. All right. Thank you. Ms. Morton? Good morning. You need to turn your microphone up. Thank you very much. Good morning, Your Honors. May it please the court. Kimmy Morton for the plaintiff appellee, Eugene Hudson, Jr. And I would just like to jump in where the conversation left off and note that in the order denying the JMOL, Judge Boasberg, certainly in the motion for reconsideration, rather, I stand corrected, when AFGE had filed a motion for summary judgment raising essentially the same points that they're making today and that they made in their JMOL, Judge Boasberg wrote that Mr. Hudson's deposition testimony was not made in, quote, direct response to precise questions about whether Cox's actions were racially motivated. And that would be found at appendix 427 to 428 in his order at page three and four. And I think that's very important because this was a very long deposition. I believe we were there for eight hours. And there was a lot of wide-ranging questions from AFGE just generally about Mr. Hudson's work with President Cox. And the deposition testimony that AFGE is citing came during a point in the deposition where he was just opining on his views of what may have motivated Mr. Cox. But from the beginning at page four of the appellant's brief, AFGE admits that, quote, from start to finish, plaintiff argued a pretext theory of discrimination in his complaint, in his summary judgment pleadings, in his opening statement at trial, in his closing statement at trial. And, of course, the judge in denying the judgment for a motion to set aside the jury verdict was correct in that the jury returned a verdict for Mr. Hudson, finding that, quote, Hudson proved by a preponderance of the evidence that AFGE discriminated against him on the basis of race when it removed the AFGE human resources and information services departments from his supervision. That was the finding of the jury based on the court's instructions to the jury to which AFGE interposed no objections before it went to the jury. A month later, AFGE moved for JMOL under Rule 50, but the court correctly stated, as this circuit has held, that in evaluating a Rule 50 motion, the court cannot lightly disturb a jury verdict and that JMOL is appropriate as a matter of law only if the evidence and all reasonable inferences that can be drawn from the evidence are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor. That is Muldrow v. Redirect, Inc. 493, F. 3rd, 160, and 165, the D.C. Circuit case in 2007. The district court could not substitute its view for that of the jury, and it can assess neither the credibility nor the weight of the evidence. That is the function of the jury, and that is precisely what the jury did in this case. And for that reason, the court denied AFGE's motion for summary judgment and the JMOL based on the same sole argument that Mr. Hudson somehow exploded his case, shot himself in the foot by a meandering comment he made during his deposition. I might add that the case that's relied on by AFGE, that's the Carpenter case, is totally different. In the Carpenter case, it was a sexual discrimination case, and the plaintiff never claimed that the discrimination was based on her gender. She claimed that she was discriminated against and passed over for a promotion because she espoused against an anti-fraternization policy, and this circuit ruled that that may be true, but that's not sex discrimination. That plaintiff in Carpenter never made the kind of showing, provided the kind of evidence of discrimination that Mr. Hudson provided by showing that Mr. Cox, the decision maker, held racial animus by his use of the term son and boy, by the fact that he took no real disciplinary action against another AFGE official who called Mr. Hudson the N-word on two separate occasions in 2011 and 2015. Mr. Hudson also introduced the evidence which the district court referred to of Rocky Kabir, another person of color who complained that the decision maker, President Cox, called him son and boy over his objections, and this kind of evidence was not presented in the Carpenter case. In addition, the court then proceeded as it had to under the law, under McDonnell Douglas, it had to proceed to then find whether AFGE's stated justification of operational efficiency suffices as a legitimate non-discriminatory explanation for Defendant's Act, citing Figueroa v. Pompeo, 923 F. 3rd, 1078, 1087 to 88, DC Circuit 2019. The district court correctly ruled that the burden then shifted to Mr. Hudson to show, quote, based on all the evidence and any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer. Mr. Hudson then presented his case involving Cox's bias against other black individuals and himself, as I have earlier discussed. That was not enough, the court said. The court said, just showing bias is not enough. You have to show that there was another reason, that there were other reasons. And the reason Mr. Hudson showed was that he was a capable leader of the HR department. AFGE National Vice President, Dorothy James, testified that he improved the department during his tenure. That's at the trial transcript at 149 to 150. AFGE emeritus, Jay Nygaard, also testified that Mr. Hudson was a good, capable leader and made very complimentary remarks about him. And that Cox's decision to take away the departments was, quote, just a way to get back at NST Hudson. And that Hudson's race was a part of it, she testified. Of course, this is just her belief. This is not evidence, but we do have evidence in the testimony regarding Mr. Cox's animus. And because the court cannot substitute its view for that of the jury and cannot assess the credibility or the weight of the evidence, the district court ruled that the evidence provided by the plaintiff was sufficient to allow the jury to, quote, be quite suspicious of AFGE's proffered rationale and to conclude that the decision to take away the two departments was pretextual. And if this belief is accompanied by a suspicion of mendacity, the likelihood of intentional discrimination is increased, permitting the jury to infer discrimination more readily as this United States Supreme Court held in St. Mary's Honor Center versus Hicks 509 U.S. 502 511 1993. Here we have shown clearly that there was mendacity, that the reason offered by the defendant is not correct, and that Mr. Cox was motivated by animus in removing the two departments. As to the sufficiency of evidence on the damages, if I only have a short period left, I would like to, again, ask the court to uphold the ruling of Judge Boisberg. He cited Carter versus Duncan hyphen Huggen limited 727 F second 1225, a DC circuit case from 1984, which held that a plaintiff's own testimony is sufficient to establish emotional distress and damages. Mr. Hudson was the highest, second highest ranking AFGE officer. He was the national secretary treasurer, the first African-American ever elected to that position, yet he was subjected to humiliation and a lot of embarrassment as he testified when almost 50%, I think it was about something like 40 or 49% of his budget and staff was stripped away by President Cox. In fact, he was, quote, the uppity Negro, and he felt devastated by that. And we believe that the court should sustain Judge Boisberg's denial of the DMOL. All right, thank you. Unless the court has questions, we have your argument, Mr. Roth. I had to reserve a minute. Okay. I have one minute. Did you have one minute left? I had to reserve two. Well, did he have any time left? Okay, you didn't have any time yet. You used it all, thank you. You'll call the next case, please.
judges: Henderson, Wilkins, Randolph